IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
May 28, 2026 05:26 PM
SCT-Crim-2024-0046
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** ) | **S. Ct. Crim. No. 2024-0046** |
| Appellant/Plaintiff, ) | Re: SX-2021-CR-00214 |
| ) | |
| v. ) | |
| ) | |
| **SHARIF MATTHEW,** ) | |
| Appellee/Defendant. ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Jomo Meade

Argued: October 14, 2025
Filed: May 28, 2026

Cite as: 2026 VI 9

**BEFORE: RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **MARIA M. CABRET**, Associate Justice.

**APPEARANCES:**

**Sean P. Bailey, Esq.**
Assistant Attorney General
St. Croix, U.S.V.I.
    *Attorney for Appellant,*

**Anthony R. Kiture, Esq.**
Kiture Law Firm
St. Croix, U.S.V.I
    *Attorney for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1     Appellant, The People of the Virgin Islands, appeals from the Superior Court's August 26, 2024 order granting Appellee, Sharif Matthew's motion to suppress all cell phone evidence obtained pursuant to a telephonic search warrant.  For the reasons that follow, consistent with our

recent holding in *People v. Cumberbatch*, 2026 VI 7, we affirm the Superior Court's August 26, 2024 order.

## I. BACKGROUND

¶ 2     This appeal arises from Matthew's motion filed on May 23, 2024, to suppress all evidence obtained pursuant to a March 2, 2021 telephonic search warrant.  This matter is one of two companion cases arising out of the same events, *People v. Cumberbatch*, SX-2021-CR-00073 and *People v. Matthew*, SX-2021-CR-00214 consolidated in the Superior Court.  The facts in both cases are identical, but some issues are distinguishable.[1]  Cumberbatch's case was resolved in *People v. Cumberbatch*, 2026 VI 7. This appeal solely addresses Matthew's suppression motion.

¶ 3     On July 12, 2024, the Superior Court held a hearing on the motion to suppress to determine (1) whether the telephonic warrant comported with the Fourth Amendment's requirements and was not overbroad or lacking in particularity and (2) whether the good faith exception applied to the search.  Testimony from the hearing, along with numerous affidavits and exhibits, produced the following facts and evidence relevant to this motion.[2]

¶ 4     On Tuesday, March 2, 2021, at approximately 11:17 a.m., the Virgin Islands Police Department (VIPD) responded to a report that there was a shooting victim at #151 Estate Carlton, St. Croix.  Upon arrival, Sergeant Aisha Jules, a VIPD detective, observed the victim, Ian Benjamin, Sr., who had suffered multiple gunshot wounds to the face, neck, right elbow, and another lodged near his heart.  Later that day at approximately 3:08 p.m., Benjamin Sr.  succumbed to his injuries shortly after his arrival at Juan F. Luis Hospital.

---

[1] *People v. Cumberbatch* raises the issue of standing while this case does not and this case raises the issue of the plain view doctrine while *Cumberbatch* does not.

[2] A more detailed recitation of the facts and procedural history of these cases is set out in *Cumberbatch* ¶¶ 2-12.

¶ 5      Sergeant Jules later reviewed surveillance footage from neighborhood cameras depicting a white Acura TL vehicle with chrome rims and a white/silver sticker on the rear passenger glass drive past Benjamin Sr.'s residence and turn around. The vehicle parked in an area that could not be seen by the surveillance video. From the video, Sergeant Jules observed a woman with a small frame appear from the area where the vehicle was parked and walk toward Benjamin Sr.'s residence. Subsequently, an African American male dressed in a black shirt and three-quarter length khaki pants also appeared from where the Acura TL was parked, walked to Benjamin Sr.'s gate, and then pointed and discharged several shots at Benjamin Sr.'s residence before returning to his vehicle.

¶ 6      Sergeant Jules' partner, Detective Raheem Benjamin, informed her that the vehicle belongs to a female known as "Tae" with a very small build who was later identified as Ta'jhanique Cumberbatch and that she is known to operate the vehicle. (J.A. 38.) Upon receiving additional information that Cumberbatch resides at No. 2 Betsy Jewel, the officers traveled to the residence where they observed a vehicle matching the description of the vehicle observed in the surveillance video. Sergeant Jules then contacted the fee simple owner of the residence and was informed that Cumberbatch resided in Apartment A—described as yellow in color—to the rear of the premises and sometimes has a male visitor.

¶ 7      Relying on this information, Sergeant Jules applied to Superior Court Judge Gallivan for a telephonic warrant that was granted on March 2, 2021 at approximately 8:00 p.m. and was executed shortly thereafter. Judge Gallivan placed Sergeant Jules under oath, received her sworn oral testimony, and verbally authorized the search. The search warrant authorized a search of apartment A of No. 2 Betsy Jewel, its curtilage, and the Acura TL vehicle. Judge Gallivan

memorialized the interaction in handwritten notes titled "Application for Search Warrant," summarizing the facts provided and describing the places to be searched. (J.A. 293.)

¶ 8    Upon execution of the warrant Sergeant Jules and other VIPD officers encountered Cumberbatch and Benjamin Sr., at Cumberbatch's apartment. Amongst the items seized during the search were: an iPhone with a brown cover found on a bed, a red iPhone found on top of a printer in the living room, and a damaged pink-gold iPhone inside a box in the living room. Three days later on March 5, 2021, Sergeant Jules filed a formal written affidavit setting forth her probable cause facts for the warrant and identifying the items sought in the search. On March 15, 2021, Sergeant Jules applied for warrants to search the contents of the electronic devices seized for evidence related to the crime and the following day the warrants were issued. On May 23, 2024, Cumberbatch filed a motion to suppress all evidence obtained pursuant to the March 2, 2021 telephonic warrant.

¶ 9    On July 7, 2024, Cumberbatch filed a second motion to suppress the evidence seized pursuant to the initial telephonic warrant and subsequent warrants permitting the search of the contents of the electronic devices. On July 10, 2024, Matthew joined in this motion to suppress. On July 11, 2024, the People filed a response opposing both the May 23 and July 7 motions and "address[ing] all [of] the issues" pertinent to them. (J.A. 97-117, 208-290.)

¶ 10    On July 12, 2024, the Superior Court conducted a hearing on the issues raised in the foregoing motions. At the conclusion of the hearing the Superior Court rendered its decision from the bench which granted the July 7, 2024 motion to suppress, finding there was a conspicuous absence of any specific information of items to be seized, and concluding that the good faith exception to warrant requirements did not apply. The Court later reduced its ruling to a written

order entered on August 26, 2024.  The People timely filed a notice of appeal with this Court on August 9, 2024.  *See* V.I. R. APP. P. 5(b)(1)-(2).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 11    This Court has jurisdiction over "all appeals arising from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court").  While not a final judgment, because the Superior Court's July 12, 2024 decision suppressed evidence in a criminal proceeding, this Court has jurisdiction over this appeal. 4 V.I.C. § 33(d)(2) ("An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence.").

¶ 12    Our review of the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error.  *St. Thomas–St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).  "In reviewing the trial court's decision on [a] motion to suppress, 'we review its factual findings for clear error and exercise plenary review over its legal determinations.'" *People v. John,* 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields,* 458 F.3d 269, 276 (3d Cir. 2006)) (internal quotation marks omitted).  We review evidentiary rulings for abuse of discretion. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008).

### B. Motion to Suppress

¶ 13    On appeal, the People ask this Court to determine that the Superior Court abused its discretion by suppressing evidence obtained from a white iPhone cell phone in a brown gel case [serial number 354875091984028], belonging to Matthew and seized during a search of Cumberbatch's apartment on March 2, 2021 pursuant to the telephonic warrant.  The People argue

*People v. Matthew*            2026 VI 9
S. Ct. Crim. No. 2024-0046
Opinion of the Court
Page 6 of 16

that the telephonic search warrant was reasonable and supported by probable cause insofar as it authorized the VIPD to search for and seize cell phones. Further, the People assert that the good faith exception to the exclusionary rule is applicable to this search. Lastly, the People argue the seizure of Matthew's cell phone was lawful as the VIPD was executing a valid search warrant for firearms and ammunition and the incriminating character of the cell phone was immediately apparent pursuant to the plain view doctrine.

1. <u>The telephonic warrant.</u>

¶ 14    The Fourth Amendment to the United States Constitution provides that search warrants must be supported by probable cause and must particularly describe "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *People v. Armstrong*, 64 V.I. 528, 530 (V.I. 2016). The primary consideration in a Fourth Amendment search or seizure analysis is "whether a police officer acted *reasonably*." *People v. Lobby*, 68 V.I. 683, 699 (V.I. 2018) (emphasis added). Reasonableness generally requires law enforcement personnel conducting a search to discover evidence of criminal wrongdoing prior to obtaining a warrant. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *Veronia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) ("[W]hether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.") (internal quotation marks omitted).

¶ 15    In determining whether probable cause exists, a judge must make a practical common-sense decision that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *John*, 52 V.I. at 256 (citing *Shields*, 458 F.3d at 277) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Moreover, the circumstances establishing probable cause must appear in the affidavit supporting the warrant. *Id.* The duty of a reviewing court is simply

to ensure that the magistrate had a "substantial basis" for concluding that probable clause existed, *id.*, and that the warrant authorizing that search "be supported by probable cause particularized with respect to that person." *Shields,* 458 F.3d at 276.

¶ 16     First, we address the question of whether Sergeant Jules supplied the judicial officer with the necessary information to support a reasonable inference that evidence of the alleged crimes would be found on a phone in Matthew's possession.  The Superior Court concluded that neither the information provided to the judicial officer, nor the affidavit established probable cause that the cellphones were evidence of the crimes alleged.  The Superior Court noted the telephonic warrant displayed a "conspicuous absence" of the persons or things to be seized despite describing the place to be searched, and was impermissibly general.  *Id.*  We agree.

¶ 17     Before turning to our analysis, it is important to clarify the requirements for a valid telephonic search warrant.  For a telephonic search warrant to be valid under our laws and rules, the testimony in support of the warrant must be "recorded verbatim by an electronic recording device, by a court reporter, or in writing."  V.I. R. CRIM. P. 4-1(b)(2)(B).  Here, there was no verbatim recording of the testimony by any of these means or any means at all.[3]  Additionally, Sergeant Jules stated during her testimony that this is a normal procedure that she has followed in obtaining telephonic search warrants which have been granted "between five and seven" times in the past.  (J.A. 229-231.)  Sergeant Jules claims that she has never been challenged on any of those warrants.  This purported practice, however, clearly contravenes Rule 4-1.  Moreover, the fact that improper practices have gone unchallenged in the past is no excuse for ignoring the requirements

---

[3] Sergeant Jules later related all the facts she allegedly presented to Judge Gallivan in her written affidavit.  Judge Gallivan's handwritten notes of her colloquy with Sergeant Jules were presented at the hearing and considered by the judge in ruling on the issues raised by the parties.

of the court rules. *See People v. Warrell*, No. ST-2019-CR-00134, 2022 WL 2666745, at *3 (V.I. Super. Ct. June 22, 2022) (noting the officer's previous involvements in cases where warrantless searches resulted in suppression); *Thomas v. People*, 63 V.I. 595, 600-01 (V.I. 2015). Rule 4-1 was adopted to ensure that an accurate record of the facts related to the judge in support of a telephonic warrant is preserved, and to avoid the kinds of conflicting factual issues that are present in this case. To the extent that Judge Gallivan's making of contemporaneous handwritten notes was an attempt to comply with Rule 4-1, the trial judge correctly gave greater weight to those notes than to the prepared affidavit of Sergeant Jules, which was filed three days after the telephonic warrant had been authorized and executed.

¶ 18    Matthew argues that the facts as communicated by Sergeant Jules in support of the warrant lack the specificity that would lead a magistrate to believe the cell phone at issue contained evidence related to the murder in question. (Appellee's Br. 9.) While an affidavit is not required to use specific language, the circumstances establishing probable cause must appear in the affidavit supporting the warrant. *John,* 52 V.I. at 257 (citing *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008)). Here, this information is absent from the affidavit. Neither the judge's documented notes entitled "Application for Search Warrant," the actual search warrant, or Sergeant Jules' March 5, 2021, affidavit include facts to support a reasonable inference that a cell phone was used in furtherance of the crime. (J.A. 293.)

¶ 19    The People argue that there is a common-sense inference establishing a nexus between a conspiracy to commit murder and the use of a cell phone. (Appellant's Br. 14.) However, despite

the rapidly developing case law regarding the ubiquity of cell phones and "geofence" warrants,[4]

there is no evidence linking the use of a cell phone to this particular crime.[5]   The Fourth

Amendment requires a "nexus between the place to be searched and the evidence sought" and

---

[4] "Geofencing" is an electronic system that allows law enforcement to establish a virtual perimeter (i.e. a fence) around a specific geographical location.  Brian L. Owsley, *The Best Offense is a Good Defense: Fourth Amendment Implications of Geofence Warrants*, 50 HOFSTRA L. REV. 829, 832-34 (2022).  The first geofence warrant was issued in 2016, and this technology allows law enforcement officers to track individuals or vehicles that have entered or exited a specific limited area based on cell phone location information.  *Id.*  Only a few federal and state courts have rendered decisions considering "geofence" warrants and circuits are split on their constitutionality.  *United States v. Smith*, 110 F.4th 817 (5th Cir. 2024) (finding geofence warrants unconstitutional); *United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (upholding denial of a motion to suppress evidence obtained from Google via a geofence warrant, but not addressing the constitutionality of geofence warrants), *cert. granted*, No. 25-112, ___ U.S. ___, 2026 WL 120676, (Jan. 16, 2026); *see also State v. Contreras-Sanchez*, No. A22-1579, 2026 WL 1015919, at *5 (Minn. Apr. 15, 2026) (finding geofence warrants are constitutional under the Minnesota Constitution on a "case-by-case" basis).

[5] The U.S. Supreme Court has observed that in contemporary society most people carry a cell phone with them at all times.  *See Carpenter v. United States*, 585 U.S. 296, 311 (2018) (finding people "compulsively carry cell phones with them at all times"); *Riley v. California*, 573 U.S. 373, 385 (2014) (noting that cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy").  But those opinions contain no indication that the Supreme Court took judicial notice of any of these facts, as opposed to relying on the evidence in the extensive records in the cases before it. Importantly, the Supreme Court made such findings to justify *increasing* Fourth Amendment protections in the cell phone context by eliminating two judicially-created exceptions to the warrant requirement.  In *Carpenter*, the Court rejected applying the third-party doctrine to permit the government to obtain cell phone location records without a warrant because such evidence constituted "near perfect surveillance, as if it had attached an ankle monitor to the phone's user."  585 U.S. at 312.   And in *Riley*, the Court declined to extend the search-incident-to-arrest exception to cell phones given that "neither of its rationales has much force with respect to digital content on cell phones."  573 U.S. at 386.

In this case, no evidence of the use or involvement of a cell phone in connection with the commission of the crime was claimed in any of the warrant applications. Because cell phone technology—which is constantly evolving—and the use of cell phones by alleged criminals are not "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," V.I. R. EVID. 201, we decline the People's invitation to effectively infer that all warrants implicitly permit searches of a cell phone.

evidence to satisfy this requirement is lacking here. *Gates*, 462 U.S. at 238. The surveillance video depicts a substantial portion of the events on the day of the murder, but the use of a cell phone is not among them. There is no cell phone seen in the video or anything to point to the conclusion that a cell phone was used in the furtherance of the crime. The speculative and unsupported reasoning that a phone may be seized as evidence of a crime despite the absence of any evidence that a phone was used in connection therewith is an impermissibly broad conclusion and not in the interest of justice. *See United States v. Griffith*, 867 F.3d 1265, 1270 (D.C. Cir. 2017) ("[T]he affidavit supporting the warrant application provided virtually no reason to suspect that Griffith in fact owned a cell phone . . . at the same time, the warrant authorized the wholesale seizure of all electronic devices discovered in the apartment . . . In those circumstances, we conclude that the warrant was unsupported by probable cause and unduly broad in its reach.").

¶ 20    Applying the People's interpretation would lead to seemingly unfettered freedom to seize the cell phones of suspects even in the absence of a substantial basis for law enforcement to reasonably believe that any evidence exists on them. Cell phones contain a "broad array of private information never found in a home in any form —unless the phone [itself] is [present]." *Riley v. California*, 573 U.S. 373, 396 (2014). As such, their seizure pursuant to a merely general search warrant cannot be condoned. The mere fact that most people in contemporary society may own a cell phone, standing alone, is not enough to justify an unrestricted warrant to search a person's home and seize any cell phones that may be present there without specific and particularized evidence in a search warrant application connecting the use of the cell phone to a crime. Thus, as we did in *Cumberbatch*, we reject the People's argument that the search warrant was supported by sufficient probable cause and that there was a nexus between the cell phone seized and the crime in this case. *Cumberbatch*, at ¶ 21.

*People v. Matthew*               2026 VI 9
S. Ct. Crim. No. 2024-0046
Opinion of the Court
Page 11 of 16

2. <u>The good faith exception.</u>

¶ 21    As this Court has established, "when police act under a warrant that is invalid for lack of probable clause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *John*, 52 V.I. at 261 (quoting *Herring v. United States*, 555 U.S. 135, 142 (2009)). This principle has been coined the "good faith" exception to the warrant requirement.

¶ 22    The People argue that even if there was no probable cause to justify seizure of the cell phones, the good faith exception applies to this case so as to validate their seizure and the use of information contained on them as admissible evidence. (Appellant's Br. 16.) They contend there are reasonable inferences apparent to both ordinary people and an officer of Sergeant Jules' experience and training that Matthew both owned a cell phone and that evidence of the crimes would likely be found on his cell phone. Upon applying the principles of the good faith exception, we reject the argument that the exception applies here, just as we recently did in *Cumberbatch*. *See Cumberbatch,* at ¶ 22.

¶ 23    Typically, the existence of a warrant is sufficient to prove that an officer conducted a search in good faith and justifies the application of the good faith exception. *United States v. Leon*, 468 U.S. 897, 922 (1984). However, the United States Supreme Court has identified three situations in which this exception does not apply: (1) evidence obtained pursuant to a warrant issued in reliance on an affidavit secured by an affiant making knowingly false statements or with reckless disregard for their truth, (2) evidence obtained pursuant to a warrant issued by a magistrate judge who has abandoned their neutral and detached role, and (3) evidence obtained pursuant to a "bare bones" affidavit or warrant that is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* at 923. The lattermost exception is germane here. *Id.* at 924-25.

> Under this exception, the executing officer must have had no reasonable grounds for believing that the warrant was properly issued. Moreover, the objective reasonableness determination does not examine the subjective states of mind of [the particular] law enforcement officers [conducting this particular search], rather it inquires whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.

*United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (citations and internal quotation marks omitted).

¶ 24    Here, the telephonic warrant was lacking in both particularity and nexus, making any reliance upon it objectively unreasonable. *See Cumberbatch,* at ¶ 22. The memorialized search warrant filed on March 5, 2021—after the search had been conducted—and especially the contemporaneous notes the judge made relating to the facts on which she authorized the telephonic warrant, are an accurate reflection of the factual basis for issuing the telephonic warrant.  There is no suggestion in the affidavit or the search warrant that indicates that the defendants owned a cell phone or that a cell phone was used in any way during the crime.  Therefore, it was not objectively reasonable for an officer to have believed they had the authority to seize any cell phones while executing that search warrant.  *See Griffith*, 867 F.3d at 1273 (finding that since there was "no observation" or evidence of the suspect using a cell phone there was no proof to support this conclusion in an affidavit).

¶ 25    Because the warrant was facially deficient and lacking in particularity, the officers could not have considered it to be valid.  Thus, the good faith exception does not apply to the seized cell phones.

   3.   <u>The seizure of cell phones under the plain view doctrine.</u>

¶ 26    The People argue that VIPD lawfully seized Matthew's cell phone pursuant to the plain view doctrine, citing *Horton v. California*, 469 U.S. 128, 141 (1990).  This issue was not brought

before the Superior Court, and consequently, it never had the opportunity to address this issue.

Therefore, this issue is likely waived -- and even if it was not waived it is not applicable in this

case.[6]  As we have previously held, the plain view exception allows an officer to make a

"'warrantless seizure of items that he or she viewed from a place or position in which he or she

was lawfully entitled to be, provided it is immediately apparent that the item observed is evidence

of a crime, contraband, or otherwise subject to seizure.'" *Heath v. People*, 78 V.I. 990, 1008 (V.I.

2024) (quoting *Gumbs v. People*, 64 V.I. 491, 508-09 (V.I. 2016)).  Here, the officers were lawfully

present in Cumberbatch's apartment as they were executing the telephonic warrant for evidence of

firearms.  The question is whether the incriminating nature of the cell phones was "immediately

apparent" at that time, given the information that they may reasonably be deemed to have known

under the circumstances.  *Heath*, 78 V.I. at 1008.

¶ 27    The People are correct in stating that this standard does not require the officers to have

"near certainty" that the items found in plain view were contraband or evidence of a crime and

officers only need "probable cause to associate the property with criminal activity" to seize

evidence. *Texas v. Brown*, 460 U.S. 730, 741 (1983); *Payton v. New York*, 445 U.S. 573, 587 (1980)

---

[6] Under our rules, "[o]nly issues and arguments fairly presented to the Superior Court may be presented for review on appeal…." V.I. R. APP. P. 4(h).  The plain view doctrine argument was not "raised or objected to before the Superior Court" in the suppression hearing by the People, and as the appellant, it bears the burden of preserving issues to be raised on appeal.  *See* V.I. R. App. P. 22(m).  Consistent with our rules, the People failed to preserve its plain view doctrine argument.  However, this Court has discretion under Supreme Court Rules of Appellate Procedure 4(h) to reach issues waived on appeal "'when the interests of justice so require.'" *Rodriguez v. People*, 71 V.I. 577, 633 (V.I. 2019) (citing *Phillip v. People*, 58 V.I. 569, 585-87 & n.19 (V.I. 2013) (reviewing waived argument under V.I. R. App. P. 22(m)); *see Babij v. Cuffy*, 79 V.I. 1080, 1098 n. 11 (reviewing waived argument under V.I. R. App. P. 4(h)). In this case, the Court chooses to address this plain view issue, in the interest of justice to provide clarification on the limits of the plain view doctrine.

(holding officers only need "probable cause to associate the property with criminal activity" to seize evidence). Even so, this standard is not met in this instance.

¶ 28    There was insufficient evidence here to link the cell phone in question to the alleged crime of murder. *See United States v. Davis*, 94 F.4th 310, 320-21 (4th Cir. 2024) (noting that a phone is an everyday object and that there must be significant additional evidence or indicators of criminality to establish probable cause). There was no evidence that Matthew had a cell phone on the day of the murder and nothing about the physical condition of the phone that the officers saw linked it to the murder. *See e.g.*, *Commonwealth v. Wright,* 99 A.3d 565, 569 (Pa. Super. Ct. 2014) (citing *Commonwealth v. Jones*, 988 A.2d 649,652 (Pa. Super. Ct. 2010)) ("[P]olice properly seized a cell phone because police knew the victim had a cell phone with him on the night of his murder and because police observed a blood-stained cell phone in plain view during their search of the defendant's dorm."). Further, there was no evidence of a specific phone call having been made by the defendants during the relevant timeframe. *Id.* at 570. (citing *Commonwealth v. McEnany*, 667 A.2d 1147,1148 (Pa. Super. Ct. 1995)) ("[P]olice were aware that the accused made a phone call to the victim's residence on the day of the murder."). Specific facts tying the cell phone to the crime are absent, and as a result, there was a lack of probable cause.

¶ 29    Cell phones are not illegal or dangerous in and of themselves and Matthew was not previously under investigation for conspiracy to commit murder. *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) ("The Supreme Court also has indicated that the plain view exception permits the warrantless seizure of 'objects dangerous in themselves.'"); *see United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) (holding that officers were justified in seizing cell phones pursuant to plain view as the result of the culmination of a months-long police investigation yielding evidence of cell phone use in murder-for-hire conspiracies). To seize a cell phone under

the facts of this case runs afoul of the plain view doctrine and the People's additional unsubstantiated arguments are unpersuasive.[7]

### III. CONCLUSION

¶ 30    For the foregoing reasons and consistent with our recent decision in *Cumberbatch*, 2026 VI 7, this Court concludes that the telephonic warrant was constitutionally defective.  The warrant failed to meet the Fourth Amendment's requirements requiring particularity and failed to establish the requisite nexus between the seized cell phones and the alleged criminal conduct.  Additionally, the officer's reliance on the deficient warrant was not objectively reasonable and the good faith exception to the exclusionary rule is therefore not applicable.  Lastly, because the incriminating nature of the cell phones was not apparent, the cell phones were not justifiably seized under the plain view doctrine.  Consequently, any evidence obtained directly or indirectly from the cell phones must be suppressed.  This Court therefore affirms the Superior Court's August 26, 2024 order granting Matthew's motion to suppress all cell phone evidence and evidence acquired from the cell phones obtained pursuant to a telephonic search warrant.

**Dated this 28th day of May, 2026.**

                                                    **BY THE COURT:**

                                                    /s/ Rhys S. Hodge
                                                    **RHYS S. HODGE**
                                                    **Chief Justice**

---

[7] Additionally, the People argue that since Matthew's phone was found in plain view near marijuana packaged in plastics bags, VIPD also had probable cause to seize the cell phone as potential evidence of drug related crimes. (Appellant's Br. at 29.)  This issue was not raised in the Superior Court as a basis for upholding the seizure of the cell phones and was only raised in a brief footnote with no citations to legal authority.  Consequently, we deem this issue to have been waived. *See* V.I. R. App. P. 4(h) and 22(m).

*People v. Matthew*
S. Ct. Crim. No. 2024-0046
Opinion of the Court
Page 16 of 16

2026 VI 9

**ATTEST:**

**DALILA PATTON, ESQ.**
**Clerk of the Court**

**By: /s/ Reisha Corneiro**
        **Deputy Clerk II**

**Dated: May 28, 2026**